[Cite as *Doolittle v. Montgomery*, 2026-Ohio-1935.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

SHAWN DOOLITTLE

Plaintiff-Appellant,

v.

ROBERT MONTGOMERY ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 JE 0025**

---

Civil Appeal from the
Steubenville Municipal Court of Jefferson County, Ohio
Case No. 24-CVH-617

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Alexandra Vance,* Legal Aid of Southeast and Central Ohio, for Plaintiff-Appellant.

Dated: May 21, 2026

**DICKEY, J.**

{¶1}  Appellant, Shawn Doolittle, appeals the September 23, 2025 judgment entry of the Steubenville Municipal Court, entering a directed verdict pursuant to Civ.R. 50(A)(4) in favor of Appellees, Robert Montgomery ("Montgomery") and Theresa Montgomery (Appellant's former landlords), at the close of Appellant's case-in-chief during the bench trial in this action for rent abatement, and compensatory and punitive damages. Although the municipal court concluded Appellees violated R.C. 5321.04 of the Landlord-Tenant Act based on the testimony of the city inspector that multiple electrical, plumbing, and structural defects rendered the residence located at 464 Linden Avenue, Steubenville, Ohio ("residence"), unfit for human habitability, the municipal court awarded no damages.  The municipal court opined Appellant had received the benefit of his bargain as he was aware of the condition of the residence when he executed the lease. The municipal court further opined Appellant forfeited any statutory or common law right to rent abatement when he exercised his statutory right to terminate the lease by vacating the residence prior to the expiration of the lease, after residing there with his family for ten months.

{¶2}  Appellant advances three assignments of error, presenting three discrete issues of law.  First, Appellant argues his knowledge of the condition of the residence does not constitute a waiver of Appellees' obligation to comply with the landlord duties listed in R.C. 5321.04.  Next, Appellant contends his decision to exercise his statutory right to terminate the lease by vacating the residence prior to the expiration of the lease does not foreclose his recovery of damages based on rent payments he made when the property was uninhabitable.  Finally, Appellant argues the trial court erred in entering judgment pursuant to Civ.R. 50, as Civ.R. 42(B)(2) governs the entry of judgment at the conclusion of the plaintiff's case during a bench trial.  Appellant asks us to reverse the judgment entry of the municipal court and remand the matter for a damages hearing. Appellees did not file a brief.

{¶3}  For the following reasons, we find all three of Appellant's assignments of error have merit.  Accordingly, the September 23, 2025 judgment entry of the municipal court is reversed.  Further, because the original trial was terminated at the close of

Appellant's case-in-chief and Appellees were foreclosed from offering any evidence, this matter is remanded for a new trial.

## FACTS AND PROCEDURAL HISTORY

{¶4}    This civil matter commenced on October 25, 2024 when Appellant filed a complaint alleging four causes of action against Appellees: violations of the landlord duties imposed by R.C. 5321.04; negligence/negligence per se; breach of the implied warranty of habitability (essentially codified in R.C. 5321.04); and retaliation in violation of R.C. 5321.02(B)(1), which prohibits retaliation by a landlord as a consequence of protected activity as defined by R.C. Chapter 5321.  Appellant seeks rent abatement and compensatory and punitive damages in the amount of $15,000.  Appellees filed a pro se answer, then retained counsel, who filed a counterclaim for unpaid rent and utilities in an unspecified amount.

{¶5}    A bench trial was conducted on September 22, 2025. Appellant, Heather Dade (Appellant identifies her as his wife, she identifies Appellant as her partner), and Earl Gates, an inspector with the city of Steubenville, testified during Appellant's case-in-chief.  Appellant and Dade testified via videoconference as they were residents of New York at the time of the bench trial.

{¶6}    Because the municipal court entered a directed verdict in favor of Appellees, they did not have the opportunity to offer any testimony.  For the same reason, the relevant facts are undisputed.

{¶7}    According to Appellant, he found a listing for the residence on Craigslist and contacted Montgomery to make a rental inquiry.  Appellant met with Montgomery at the residence the same day, and Montgomery represented "there was basically nothing wrong with it." (Trial Tr., p. 24).

{¶8}    Appellant conceded he conducted a "walk-though" prior to executing the lease, but explained the walk-through was rushed as he was under considerable pressure to find a place for his family to live.  Appellant further conceded he "took what was available for [him]," and characterized the proposed living arrangement as "temporary." (*Id.* at p. 78).  Appellant, Dade, and their four children began their tenancy in September of 2023.

**{¶9}** The terms of the original lease, which was executed on August 30, 2023, included monthly rent in the amount of $800 (not including utilities) and a security deposit in the amount of $1,350. The one-year lease term commenced on August 30, 2023 and ended on August 29, 2024.

**{¶10}** The municipal court characterized the lease as an "emergency move-in agreement," because Appellant's family was living with Dade's sister in a "two-bedroom" at the time and needed to secure immediate housing. (*Id*. at p. 83). However, Appellant does not argue the term "emergency move-in agreement" has any legal significance for the purpose of this appeal, merely that it demonstrates the exigency of Appellant's circumstances when he executed the lease.

**{¶11}** During the first month of his tenancy, Appellant told Montgomery that Appellant could not afford the rent and security deposit in addition to the monthly utility payments. Consequently, the parties to the lease modified its terms by written agreement on September 30, 2023. The amendment increased the monthly rent to $953 but waived the security deposit. Appellant testified he paid the rent with the Social Security Income checks he received for himself and his daughter.

**{¶12}** According to Appellant, Montgomery employed a man named "Larry," who was in the midst of performing repairs at the residence when Appellant did his walk-through. According to Dade, Montgomery characterized the residence as a work in progress. In other words, Montgomery represented repairs on the residence would continue during Appellant's tenancy.

**{¶13}** Appellant testified the many defects in the residence revealed themselves over time. The record includes forty-six photographs taken in June of 2024, which depict structural and safety hazards throughout the home, including holes, weakened flooring, and patched areas. Hazards in the bathroom included exposed plumbing and exposed electrical outlets in close proximity to the water connection. There was paint chipping and holes in the kitchen, including a hole near the refrigerator that allowed mice to enter the residence, as well as water intrusion near electrical components. The furnace was inoperable so the residence was heated by electric baseboard heaters. Appellant testified he patched a hole in the ceiling to prevent mice from entering the residence.

Case No. 25 JE 0025

{¶14} The exterior of the home was in similar disrepair. The rear steps were barely connected to the structure and the rear porch was unstable. There was structural separation in the basement/foundation.

{¶15} In December of 2023, pursuant to R.C. 5321.07(A), Appellant hand-delivered written notice to Montgomery of the multiple defects in the residence and requested repairs within 30 days. Appellees provided a single, shoddy repair to the kitchen floor between 60 and 90 days after the R.C. 5321.07(A) notice was tendered. (*Id.* at p. 65-66).

{¶16} An undated text exchange between Appellant and Montgomery, which serves as the basis for the retaliation claim, reads in its entirety:

Appellant:     Ok thank you I will be on the phone to the building inspector.

               As a landlord you are suppose[d] to come and collect rent, not meet you somewhere in town [sic]. We are leaving in July

Montgomery: You can do that too and while you're on the phone with the building inspector if that happens I will put you out of the house for sure because if they say something is not right and it can't be occupied and that means you have to leave so you go right ahead and do that buddy put your family on the street because I'm telling you I ain't fooling with you that happens you'll be out of there

Appellant:     You as a landlord have to rehouse me if this home becomes condemned

Montgomery: No that's not the agreement never had it I just gave that to you

{¶17} In the first few days of June of 2024, Appellant levied a complaint with the city building inspector as Montgomery had not addressed the majority of the problems. Appellant was frustrated with the conditions and lack of heat.

{¶18} Gates testified Appellant executed a consent to inspect form on June 7, 2024. That same day, Gates inspected the property. He documented numerous

violations, including electrical and plumbing problems, structural damage, a lack of smoke detectors, and heating issues, which he opined constituted serious habitability and life-safety deficiencies. (*Id.* at p. 12-13; 15-16).

**{¶19}** After Gates reviewed the written report he prepared following the inspection at the bench trial, he provided the following summary of the violations:

> The first violation, the foundation wall underneath the kitchen was deteriorating underneath. I have pictures to show that.
>
> The front porch and rear deck steps were in bad shape. There's (inaudible) patch to the deck improperly. Deck repair's not properly done. There was big gaps between. The nails weren't even connecting anything.
>
> The ceilings had paint peeling and falling off.
>
> Plumbing drain for the shower and sink not properly installed. There was no traps on them.
>
> The electrical was baseboard heaters, not properly installed, and wired incorrectly.
>
> No smoke detectors were in there. There was no heating except for the electrical.

(*Id.* at p. 15-16).

**{¶20}** The report documents the residence was unfit for human habitation. Gates likewise testified at the bench trial that the home was uninhabitable. (*Id.* at p. 17).

**{¶21}** Based on the inspection, Gates initiated the city's enforcement process. He provided notice of the defects to Appellees. However, Appellees informed Gates that they could not afford to make the repairs. (*Id.* at p. 8-10; 19).

**{¶22}** Five days after the city inspection, Appellees served Appellant with a three-day notice to leave the residence pursuant to R.C. 1923.04 ("pre-eviction notice"). When Appellant told Montgomery that Appellant and his family would be vacating the residence on July 1, 2024, Montgomery retracted the pre-eviction notice.

Case No. 25 JE 0025

**{¶23}** Gates imposed a fine and instituted legal action against Appellees on behalf of the city. Appellees ultimately sold the residence.

**{¶24}** Appellant testified that all six residents suffered from constant illnesses as a consequence of the chipping paint and the black mold in the bathroom. He further testified the children were "sick at least once a week" and "had to go to doctor visits all the time." (*Id.* at p. 75). The municipal court sustained Appellees' objection to the foregoing testimony as there were no medical records offered into evidence. Dade sustained one injury when the flooring in the hallway collapsed and injured her foot. She suffered some pain for a few days following the injury. Dade further testified she fell down the front steps in March of 2024, but conceded she fell because the front steps were slippery.

**{¶25}** Appellant and his family vacated the residence on July 1, 2024. He testified the residence was in the same condition on July 1, 2024 as it was on August 30, 2023 when he executed the lease.

**{¶26}** Exhibits admitted during Appellant's case-in-chief include the lease agreement and the subsequent amendment; the R.C. 5321.07(A) letter; the text message exchange between Appellant and Montgomery; the consent to inspection form executed by Appellant; the pre-eviction notice; a USB flash drive containing video of the residence; rent receipts; an audio/video recording; and the 46 photographs of the residence.

**{¶27}** At the conclusion of Appellant's case-in-chief, Appellees moved for a directed verdict. Because the first cause of action in the complaint is predicated upon the violation of R.C. 5321.04, captioned "Obligations of landlord," Appellees argued Appellant's recovery was strictly limited to the remedies set forth in R.C. 5321.07, captioned "Notice to remedy conditions; rent withholding; other remedies; exceptions." The statutory scheme requires the tenant to provide written notice to the landlord of any and all conditions on the premises "that could materially affect the health and safety of an occupant."

**{¶28}** Pursuant to R.C. 5321.07(B), if the conditions are not remedied by the landlord in a timely fashion, the tenant "may do one of the following":

(1) Deposit all rent that is due and thereafter becomes due the landlord with the clerk of the municipal or county court having jurisdiction in the territory in which the residential premises are located;

(2) Apply to the court for an order directing the landlord to remedy the condition. As part of the application, the tenant may deposit rent pursuant to division (B)(1) of this section, may apply for an order reducing the periodic rent due the landlord until the landlord remedies the condition, and may apply for an order to use the rent deposited to remedy the condition. In any order issued pursuant to this division, the court may require the tenant to deposit rent with the clerk of court as provided in division (B)(1) of this section.

(3) Terminate the rental agreement.

{¶29} Appellant countered there is a two-year statute of limitations for landlord-tenant claims and no statutory prohibition for abatement claims following the termination of a rental agreement. Appellant further argued he need not be current on his rental payments in order to recover retroactive rent abatement based on the fact that the residence was uninhabitable during Appellant's entire tenancy.

{¶30} The municipal court opined:

[Appellant] entered into a contract and he saw the property beforehand. And I agree with [Appellees' counsel] that [Appellant] took advantage of the statutory procedure. He served that in December. I was wondering why he didn't move out until July 1st.

And even if you're successful, I believe on your -- the other causes of action [negligence/negligence per se, breach of implied warranty of habitability, retaliation], I don't believe that there's been any evidence before the Court to where I could award any damages beyond nominal.

And for those reasons, I'm going to grant [Appellees'] motion.

(*Id.* at p. 93-94).

**{¶31}** The municipal court continued:

As far as your counterclaim goes, I don't – they don't owe you any money.

. . .

The – there was a – he didn't pay his June rent because he got a storage unit, and I find that to be appropriate. He's not going to owe any rent for the month of July.

And [Appellees] don't own this property anymore, do you? You sold that?

. . .

But I do agree that the property was in just deplorable condition, and it never should have been rented out to anybody.

(*Id.* at p. 94).

**{¶32}** In the judgment entry on appeal, the municipal court found the residence was in deplorable condition when the lease was executed and Appellees "were to work toward restoring the home." (J.E., p. 1). After reviewing the facts, the municipal court observed Appellant "did not initiate a rental deposit with the Court nor did he apply to the Court for an order of remedy. Rather, on July 1, 2024[, Appellant] terminated the lease agreement in accordance with R.C. 5321.07(B)(3) and vacated. No rent was paid for the months of June, July, and August 2024." (*Id.* at p. 2).

**{¶33}** With respect to the statutory violations and the breach of implied warranty of habitability claim (the first and second causes of action), the municipal court recognized R.C. 5321.07 was *not* the exclusive remedy for R.C. 5321.04 violations, citing *Miller v. Ritchie*, 45 Ohio St.3d 222 (1989). Nevertheless, the municipal court found Appellant opted to terminate the rental agreement pursuant to R.C. 5321.07(B)(3) – and no other

damages were proven i.e., physical injuries, personal property damage, cost of alternative housing – so only nominal damages were available.

**{¶34}** The municipal court concluded rent abatement was unwarranted despite its earlier finding of fact that Appellees were "to work toward restoring the home." The judgment entry reads in relevant part:

> [Appellant] was seeking a portion of rent abatement but the Court is not inclined to make such an award because [Appellant] viewed the property before entering into the lease agreement and was well aware of the home's condition. The home was in the same condition the day [Appellant] moved in as when he left. [Appellant] further agreed on the rental amount and actually negotiated a lower payment. [Appellant] was able to pay for a storage unit using the June rent and did not have to pay rent for June, July, and August 2024. There was no evidence [Appellant] had to incur costs of rehousing such as a hotel stay.

(J.E., p. 3-4).

**{¶35}** With respect to the third cause of action (violations of R.C. 5321.04 are negligence per se - *Robinson v. Bates*, 2006-Ohio-6362), the municipal court found no evidence of damages in the record due to the absence of personal property damage or personal injury resulting from the condition of the residence. Finally, the municipal court opined the text exchange did not constitute retaliation (the fourth cause of action), but instead notice that Appellant and his family would be forced to vacate the residence if the city concluded it was uninhabitable.

**{¶36}** According to the judgment entry, Appellees withdrew the counterclaim. This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT ANY DAMAGES, INCLUDING RENT ABATEMENT, AFTER FINDING VIOLATIONS OF R.C. 5321.04, BY RELYING ON**

**APPELLANT'S PRE-LEASE VIEWING IN CONTRAVENTION OF THE NONWAIVER PROVISIONS OF R.C. 5321.13 AND OHIO'S STATUTORY WARRANTY OF HABITABILITY.**

{¶37} Statutory interpretation is a question of law to be reviewed de novo. *Kapper v. Valantine Roofing & Home Remodeling Inc.*, 2026-Ohio-103, ¶ 7 (7th Dist.), citing *Richmond Mills, Inc. v. Ferraro*, 2019-Ohio-5249, ¶ 29 (7th Dist.). Ohio's landlord-tenant statute, R.C. Chapter 5321, imposes duties on landlords that did not exist at common law and provides tenants with leverage to redress breaches of those duties. *Miller v. Ritchie*, 45 Ohio St.3d 222, 224 (1989).

{¶38} Relevant to the instant case, R.C. 5321.04(A) reads in relevant part, "[a] landlord who is a party to a rental agreement shall do all of the following:

(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

. . .

(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord;

. . .

(6) Supply running water, reasonable amounts of hot water, and reasonable heat at all times, except where the building that includes the dwelling unit is not required by law to be equipped for that purpose, or the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant and supplied by a direct public utility connection[.]"

Case No. 25 JE 0025

{¶39}  To establish a breach of R.C. 5321.04, the tenant must demonstrate: (1) the landlord received notice of the defective condition of the rental premises; (2) the landlord knew of the defect; or (3) the tenant made reasonable but unsuccessful efforts to notify the landlord.  *Shroades v. Rental Homes*, 68 Ohio St.2d 20, 25-26 (1981).  Further, R.C. 5321.07(A) provides if a landlord fails to comply with the obligations imposed by R.C. 5321.04 or the rental agreement, the tenant must "give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance."

{¶40}  Pursuant to R.C. 5321.07(B), if the condition is not remedied in a timely manner, the tenant "may do one of the following":

(1) Deposit all rent that is due and thereafter becomes due the landlord with the clerk of the municipal or county court having jurisdiction in the territory in which the residential premises are located;

(2) Apply to the court for an order directing the landlord to remedy the condition. As part of the application, the tenant may deposit rent pursuant to division (B)(1) of this section, may apply for an order reducing the periodic rent due the landlord until the landlord remedies the condition, and may apply for an order to use the rent deposited to remedy the condition. In any order issued pursuant to this division, the court may require the tenant to deposit rent with the clerk of court as provided in division (B)(1) of this section.

(3) Terminate the rental agreement.

{¶41}  However, the Ohio Supreme Court in *Miller v. Ritchie*, 45 Ohio St.3d 222 (1989), opined the statutory remedies are neither mandatory nor exclusive:

R.C. 5321.07 should not be construed as the exclusive remedy for tenants aggrieved by a landlord's breach of duty. The language of the statute is discretionary, providing that ". . . the tenant may . . ." use one of the remedies provided in the statute "[if] a landlord . . . after receipt of . . . notice fails to remedy the condition within a reasonable time . . . and if the

tenant is current in rent payments . . . ." As stated in our decision in *Shroades v. Rental Homes* (1981), 68 Ohio St.2d 20, 25, 22 O.O.3d 152, 155, 427 N.E.2d 774, 777:

> " . . . [T]he remedies provided in R.C. Chapter 5321 are cumulative . . . . For example, the remedy of depositing rental payments with the clerk of court is grossly inadequate to compensate tenants for [personal injuries] . . . . An alternative remedy of termination of the lease is also not an adequate or viable option for many tenants when there is a lack of availability of other apartments and considering the costs involved in relocating. Thus, the new remedies given tenants in R.C. Chapter 5321 are intended to be preventive and supplemental to other remedial measures."

*Id.* at 224.

**{¶42}** The municipal court concluded Appellees had violated R.C. 5321.04(A)(1), (2), (4), and (6). Nonetheless, the municipal court concluded Appellant's knowledge of the condition of the residence prior to the execution of the lease waived Appellees' breach of their statutory duty in Ohio.

**{¶43}** In his first assignment of error, Appellant argues the municipal court's legal conclusion is directly at odds with the anti-waiver provisions of R.C. 5321.13, captioned "Terms barred from rental agreements." Specifically, R.C. 5321.13(A) reads in relevant part, "[n]o provision of this chapter may be modified or waived by any oral or written agreement . . ." R. C. 5321.13(E) reads in relevant part, "[a] rental agreement . . . may not permit the receipt of rent free of the obligation to comply with section 5321.04 of the Revised Code." R.C. 5321.13(E) has not been interpreted by any Ohio court. However, commentators have interpreted subsection (E) to prohibit reduced rent based on substandard conditions in rental agreements. Appellant argues, to the same extent a landlord may not rely on an oral or written agreement with a tenant waiving the landlord's statutory duties, the landlord may not rely on the tenant's knowledge of the conditions prior to executing the lease to excuse the landlord's statutory duties.

{¶44} The Ohio Supreme Court soundly rejected the theory of waiver through acquiescence based on defects discovered *after* the execution of a lease in *Miller v. Ritchie*, 45 Ohio St.3d 222 (1989), based on the public policy behind the anti-waiver provisions in R.C. 5321.13. The *Miller* Court observed:

[A] tenant does not waive the right to recover damages for a landlord's breach of duty to maintain rental property when, as happened here, the tenant pays rent and tries to persuade the landlord to make repairs rather than pursue R.C. 5321.07 remedies. Resolution of landlord-tenant conflicts without litigation should be encouraged, not penalized.

The fact that the Ritchies pursued only this latter remedy for over two years does not mean they acquiesced in the defective condition of the apartment. Rather, the record indicates, from the onset of the Ritchies' occupancy, that Miller promised to fix any problems in the apartment and Mr. Ritchie repeatedly requested Miller to make repairs.

Moreover, a tenant's acquiescence in the defective condition of an apartment does not relieve the landlord of the duty to maintain the apartment in conformance with R.C. 5321.04. Nor does it constitute an enforceable contractual waiver of the tenant's right to recover damages. The Landlords and Tenants Act prohibits any agreement between the landlord and tenant which purports to waive the landlord's duty to maintain the premises and any agreement that purports to waive the tenant's right or ability to bring an action for damages. R.C. 5321.13; 5321.06. 1 Restatement of the Law 2d, Property, Landlord & Tenant (1977) 360, Section 11.1, Comment *g*, states: "The tenant is entitled to an abatement of the rent at any time after the landlord's default. Failure to assert this right is not a waiver of it. When he asserts the right, the abatement will relate back to the date when he was first entitled to it. . . ."

This is not to say that a tenant may delay indefinitely before asserting his legal right to recover damages. Ohio law provides defenses to those

aggrieved by a party's delay in asserting rights. These defenses include laches, equitable estoppel, and statutes of limitations. None of these defenses were raised by Miller. None are supported by the record.

We hold that where a landlord has been placed on notice of a tenant's claim, the tenant's occupancy of defective rental premises over a lengthy period of time does not constitute a waiver of the landlord's duty to maintain the premises as required by R.C. 5321.04 or a waiver of the tenant's right to recover for damages resulting from the landlord's breach of duty.

*Id.* at 225-226.

**{¶45}** Appellant contends the municipal court's decision violates R.C. 5321.13(A) and (E). However, subsection (A) reads in relevant part, "[n]o provision of this chapter may be modified or waived by any oral or written agreement . . ." There is no evidence of an oral or written waiver in this case. The alleged waiver in this case is tacit, as it is inferred from Appellant's knowledge of the condition of the residence prior to the execution of the lease.

**{¶46}** R.C. 5321.13(E) reads in relevant part, "[a] rental agreement . . . may not permit the receipt of rent free of the obligation to comply with section 5321.04 of the Revised Code." However, there is no evidence in the record of an agreement by Appellant to accept the many defects in the residence, as both Appellant and Dade testified they expected repairs to continue during their occupancy.

**{¶47}** Here, the municipal court's legal conclusion that Appellant tacitly waived Appellees' statutory duties does not constitute an actual violation of the anti-waiver provisions of R.C. 5321.13. However, the public policy behind those provisions demonstrates the legislature's intent to prohibit landlords from avoiding their statutory obligations, whether by express or tacit acceptance of substandard living conditions by a tenant. Accordingly, we find the same public policy underlying the prohibition of oral or written waivers of habitability in a lease should likewise prohibit Appellees in this case

from avoiding their statutory obligation based on Appellant's alleged tacit waiver, due to his awareness of the condition of the residence prior to executing the lease.

**{¶48}** The Ohio Supreme Court in *Miller* did not predicate its opinion on a specific violation of R.C. 5321.13. Miller did not argue the Ritchies entered into an oral or written agreement to waive Miller's statutory duties, but instead that the Ritchies acquiesced to the defects based on their continued tenancy after the defects were discovered. The Ohio Supreme Court extended the public policy underlying R.C. 5321.13 to prohibit waiver by acquiescence.

**{¶49}** The Ninth District Court of Appeal extended the rationale in *Miller* to pre-lease knowledge in *Brown v. August,* 2002-Ohio-80 (9th Dist.). The Ninth District opined, "August had the statutory obligation to repair and maintain the rental premises. Whether the Browns knew of the conditions complained of before moving in the premises is immaterial." *Id*. at *2. The Ninth District soundly rejected the very same "benefit of the bargain" rule advanced by the municipal court here.

**{¶50}** Based on the Ohio Supreme Court's reasoning in *Miller, supra,* we find the municipal court erred as a matter of law when it concluded a tenant's knowledge of the condition of a residence prior to executing a lease waives the landlord's statutory duty to keep the premises in a habitable condition because it violates the public policy behind the anti-waiver provisions of R.C. 5321.13.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONSTRUING R.C. 5321.07 AS AN EXCLUSIVE OR FORFEITURE-CREATING REMEDY THAT ELIMINATES A TENANT'S ABILITY TO RECOVER RENT ABATEMENT OR DAMAGES FOR RENT PAID DURING THE LANDLORD'S PERIOD OF NONCOMPLIANCE.**

**{¶51}** Next, Appellant challenges the municipal court's conclusion that he forfeited his claim for rent abatement because he vacated the residence and terminated the lease prior to its expiration pursuant to R.C. 5321.07(B)(3), citing *Miller, supra*. Oddly, the municipal court recognized the statutory remedies, including termination of the lease, are

"preventative and supplemental," citing to *Shroades, supra*, then held termination of the lease foreclosed any rent abatement. The *Miller* Court adopted the Restatement of the Law 2d, Property, Landlord & Tenant (1977) 360, Section 11.1, Comment g, which states: "[t]he tenant is entitled to an abatement of the rent at any time after the landlord's default. Failure to assert this right is not a waiver of it. When he asserts the right, the abatement will relate back to the date when he was first entitled to it. . . ."

**{¶52}** Relevant to both the first and second assignments of error, the *Miller* Court opined:

> Where a landlord breaches a duty to maintain rental property and the tenant does not make the repairs, the measure of damages is the difference between the rental value of the property in its defective condition and what the rental value would have been had the property been maintained. *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 513 N.E.2d 737, paragraph one of the syllabus. Rarely, if ever, will a defective rental property have a value of zero.

> In *Smith*, we reserved the possibility of using a reduction-in-use measure of damages in an appropriate case. This second opportunity (to examine damage issues in a landlord-tenant dispute) prompts us to conclude that reduction-in-use is not a satisfactory measure. Evidence showing reduction-in-use is relevant. But damages should be computed by measuring the effect of such reduction-in-use (together with any other defect in the leasehold) on the rental value of the property.

> We reject the landlord's contention that the record does not contain sufficient evidence to make a damages award. The stipulated rent amount is presumptive evidence of the rental value of the property without defects. *Smith, supra*. The tenant's undisputed testimony as to the extent of defects, even if not accompanied by the tenant's opinion on the monetary value of the defective property, is sufficient evidence on which to base a damages award. However, the finder of fact (judge or jury) must determine the

monetary amount by which the defects and the reduction in use have lessened the value of the leasehold.

*Miller*, 45 Ohio St.3d at 226-227. While the tenant may testify as to the value of the defective property, the opinion of the tenant, even if undisputed, is not binding. *Smith*, *supra*.

**{¶53}** Based on *Miller*, we find as a matter of law that Appellant did not waive his right to rent abatement when he vacated the residence and terminated the lease prior to its expiration. The Ohio Supreme Court has twice recognized the statutory remedies at issue here are cumulative and supplemental.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED BY GRANTING A "DIRECTED VERDICT" AT THE CLOSE OF APPELLANT'S CASE IN A BENCH TRIAL, RATHER THAN APPLYING CIV.R. 41(B)(2), AND BY CONCLUDING AS A MATTER OF LAW THAT NO RELIEF WAS AVAILABLE DESPITE ITS OWN FINDING OF STATUTORY VIOLATIONS.**

**{¶54}** Civ.R. 41 governs the dismissal of civil actions both voluntary and involuntary. Subsection (B)(2), captioned "Dismissal; Non-Jury Action," reads in its entirety:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ. R. 52 if requested to do so by any party.

{¶55} We have observed a motion for directed verdict is not the proper vehicle for dismissal in a nonjury civil action. Rather, "the proper means to seek dismissal after presentation of the plaintiff's case in a civil bench trial is under Civ.R. 41(B)(2)." *Staffilino Chevrolet, Inc. v. Balk*, 2004-Ohio-3633, ¶ 75 (7th Dist.).

{¶56} After recognizing only juries render verdicts, while courts render judgments, the Tenth District opined in *Jarupan v. Hanna*, 2007-Ohio-5081 (10th Dist.):

> The distinction between a Civ.R. 50(A)(4) directed verdict and a Civ.R. 41(B)(2) involuntary dismissal is important, as the two require trial courts and appellate courts to apply different standards of review.
>
> According to Civ.R. 50(A)(4), a trial court must grant a motion for directed verdict if, after construing the evidence most strongly in favor of the nonmoving party, it concludes that "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to [the nonmoving] party." *See Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, at ¶ 14; *Goodyear Tire & Rubber Co. v. Aetna Cas. & Surety Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 3. A motion for directed verdict tests whether the evidence is sufficient to warrant a jury's consideration, so in deciding whether to grant a directed verdict, a trial court considers neither the weight of the evidence nor the credibility of the witnesses. *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, at ¶ 31; *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252. The trial court's sole concern is whether the non-moving party adduced evidence of substantial probative value in support of each element of her claims. *Estate of Cowling* at ¶ 31; *Wagner* at 119, 671 N.E.2d 252; *Cooper v. Grace Baptist Church of Columbus, Ohio, Inc.* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357. If she has, then the trial court must deny the motion. *Estate of Cowling at ¶ 31*; *Cooper* at 734, 612 N.E.2d 357. Because a directed verdict tests only the sufficiency of the evidence, it presents a question of

law that appellate courts review de novo. *Groob* at ¶ 14; *Goodyear Tire & Rubber Co.* at ¶ 4.

In contrast to Civ.R. 50(A)(4), Civ.R. 41(B)(2) allows a trial court to determine the facts by weighing the evidence and resolving any conflicts therein. *Whitestone Co.* [v. *Stittsworth*, Franklin App. No 06AP-371,] 2007-Ohio-233, 2007 WL 155299, at ¶ 13; *Sharaf* [v. *Youngman*, Franklin App. No. 02AP-1415], 2003-Ohio-4825, 2003 WL 22100140, at ¶ 8. If, after evaluating the evidence, a trial court finds that the plaintiff has failed to meet her burden of proof, then the trial court may enter judgment in the defendant's favor. *Daugherty* [v. *Dune*, (Dec. 30, 1999)], Franklin App. No. 98AP-1580, 1999 WL 1267342. Therefore, even if the plaintiff has presented evidence on each element of her claims, a trial court may still order a dismissal if it finds that the plaintiff's evidence is not persuasive or credible enough to satisfy her burden of proof. *Tillman* [v. *Watson,* Champaign App. No. 06-CA-10,] 2007-Ohio-2429, 2007 WL 1454781, at ¶ 11. An appellate court will not overturn a Civ.R. 40(B)(2) involuntary dismissal unless it is contrary to law or against the manifest weight of the evidence. *Whitestone Co.* at ¶ 13; *Sharaf* ¶ 8.

*Jarupan* at ¶ 7-9 (finding sufficient evidence to survive a directed verdict and remanding for new trial in the absence of credibility determinations reserved to the factfinder).

{¶57} Accordingly, we find the municipal court erred as a matter of law when it entered a directed verdict at the close of Appellant's case-in-chief at the bench trial.

## **REMAND**

{¶58} Appellant requests this matter be remanded for a damages hearing, that is, Appellant seeks to preserve the municipal court's finding that Appellees violated R.C. 5321.04. However, Appellees were foreclosed from offering evidence at the bench trial because it was terminated at the close of Appellant's case-in-chief.

{¶59} Civ.R. 41(B)(2) reads in relevant part, "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the

defendant, *without waiving the right to offer evidence in the event the motion is not granted*, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff *or* may decline to render any judgment *until the close of all the evidence*." (Emphasis added.) To sustain the municipal court's liability determination based solely on Appellant's evidence would violate Appellees' right to due process. Accordingly, we remand this matter for a new trial.

## CONCLUSION

{¶60} For the foregoing reasons, we find all three of Appellant's assignments of error have merit. Accordingly, the September 23, 2025 judgment entry of the municipal court is reversed. Further, because the original trial was terminated at the close of Appellant's case-in-chief and Appellees were foreclosed from offering any evidence, this matter is remanded for a new trial.

Robb, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Steubenville Municipal Court of Jefferson County, Ohio, is reversed.  We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**